**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1799-19
A-2495-19

MARTA STEKELMAN,

     Plaintiff-Respondent,

v.

CHRISTINE CARHART,
individually and as an agent
or employee of First Service
Residential Company,

     Defendant-Appellant.

_____

MARTA STEKELMAN,

     Plaintiff-Respondent,

v.

SEAVIEW AT SHARK RIVER
ISLAND HOMEOWNERS
ASSOCIATION, INC.,

     Defendant-Appellant.

_____

Argued (A-1799-19) December 9, 2020 and Argued (A-2495-19) January 27, 2021 – Decided July 29, 2021

Before Judges Ostrer and Accurso.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket Nos. L-3240-19 and L-3446-19.

Catherine M. Brennan argued the cause for appellants (Hill Wallack LLP, attorneys; Catherine M. Brennan, on the briefs).

Respondent has not filed a brief.

PER CURIAM

In these two appeals, which we consolidate for purposes of our opinion, a homeowners association and its manager contend the trial court abused its discretion by denying them Rule 1:4-8 frivolous litigation sanctions against a townhouse owner who, acting pro se, unsuccessfully sued the association over its approval of a large capital improvement project, and also unsuccessfully sued the manager over her allegedly defamatory communication about the owner's lawsuit. As we discern no basis to disturb the trial court's exercise of discretion, particularly given the incomplete record before us, we affirm.

I.

Marta Stekelman, the townhouse owner, was represented by a major law firm when she filed a declaratory judgment action to determine the association's

authority to undertake its planned re-siding project. Evidently, Stekelman also shared her opposition to the project in a letter to other owners. That prompted the association's manager, Christine Carhart, to assert, in a letter she sent to owners, that Stekelman's lawsuit sought to "derail" the project; her suit had "no substance"; it was an "attempt by one person to overrule the will of the majority of owners"; and it would "cause delay and unnecessary expense" for the association and its members. Carhart provided Stekelman's name and her address.

Stekelman then filed a pro se defamation complaint against Carhart, contending that Carhart's reference to "derailing" the project implied criminal behavior; and her letter prompted residents to attack her "verbally and by e-mail communications." She alleged the letter damaged her reputation among her neighbors and friends.

Shortly afterwards, Stekelman voluntarily dismissed the declaratory judgment complaint without prejudice. She later certified, her attorney "did not wish to proceed" as her counsel, "but advised [her] she could re-file [her] action," which she did. In her pro se complaint, Stekelman alleged the association approved the $8 million re-siding project in "an unlawful and incoherent manner." Stekelman also alleged the project would excessively

3

deplete the association's reserve fund; and she questioned the selected contractor's capabilities. Apparently as alternative relief, she asked the court to address the contractor's qualifications and require the contractor to provide a surety bond.

In separate letters through counsel, the association demanded that Stekelman withdraw her two complaints because they were frivolous; and if she did not, the association would seek monetary sanctions. Regarding the defamation complaint, counsel contended that "derail" was not used in a criminal sense; the statements in Carhart's letter were true; and Stekelman could not prove damages, particularly because she was retired. Regarding the other complaint, counsel contended that an engineer's report documented the need for the re-siding project; the association complied with its bylaws; over two-thirds of members in good standing approved the project; and the reserve fund would not be depleted. The letter did not address the contractor's qualifications or the surety bond issue.

Stekelman did not withdraw either complaint. Upon separate motions of Carhart and the association, the court dismissed the defamation action without prejudice and, a couple months later, granted summary judgment and dismissed with prejudice the complaint regarding the project. Stekelman had retained new

4

counsel to respond to the summary judgment motion. We do not have the motion papers, argument transcripts, or the court's oral decision granting either motion.

Sanctions motions in the two cases followed the court's decisions on the dispositive motions. Carhart and the association argued that there was no reasonable basis in law for either complaint. Stekelman submitted written opposition and appeared pro se to argue against the motion regarding the defamation complaint; and was represented by counsel in opposing the other motion. During argument on the defamation case, Stekelman repeated that Carhart's letter caused people to think less of her. She also stated under oath that if she "knew [she] would have to pay if [she] lost [she] may have acted different[ly]." Opposing the second sanctions motion, Stekelman's attorney argued that he presented a non-frivolous, albeit unsuccessful, argument challenging the association's approval of the project; that is, that the association lacked authority to continue the vote from one meeting to the next.

The court denied both motions.

Regarding the defamation case, the judge explained in a supplemental written decision that she dismissed the complaint without prejudice because "it did not articulate a legal cause of action for defamation," but that Carhart's email was nonetheless "unprofessional [and] antagonistic," it inappropriately included

5

Stekelman's name and address, and Stekelman suffered genuine "distress" as a result. The judge concluded that plaintiff did not act with "bad faith or malicious intent" nor was it shown that plaintiff knew that Carhart's letter was not actionable defamation. The judge also stated in her earlier oral decision that it was "understandable why a self-represented litigant would be upset" by Carhart's communication and "make an application to address same."

In her oral decision denying sanctions in the case challenging the project itself, the judge made two findings. First, she held that the complaint was not frivolous, as it was not brought in bad faith, solely to harass, delay or cause malicious injury, nor was it "filed without a reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification, or reversal of the existing law." The judge noted that Stekelman, in her pro se complaint, "raised the issue of special meetings" and objected to the "manner of the vote," and her counsel presented a "valid" but ultimately unsuccessful "argument as to whether the board was able to 'continue the special assessment meeting.'" Secondly, the court held that the association's counsel's "safe-harbor letter" did not adequately address the weaknesses in Stekelman's complaint; specifically, the letter did not address the association's authority to continue its vote from one meeting to the next.

6

Carhart and the association appeal. Carhart contends that Stekelman lacked any reasonable basis to ground her defamation complaint on Carhart's use of the word "derail"; and the court relied on the wrong factors in denying fees under Rule 1:4-8 and N.J.S.A. 2A:15-59.1. Specifically, Carhart contends the judge mistakenly relied on her dim view of Carhart's statement, notwithstanding it was not actionable defamation; Stekelman's subjective good faith; and Stekelman's understandable desire to seek redress.

For its part, the association contends Stekelman lacked a reasonable basis in law to allege the association's vote was unlawful; the court failed to consider factors that allegedly indicated Stekelman's bad faith desire to delay the project; and the association's safe-harbor letter was not procedurally defective, because Stekelman did not explicitly raise the "[meeting] continuation issue" in her complaint; rather, newly retained counsel raised the issue in opposing the summary judgment motion.

Stekelman did not file an opposing brief in either appeal.

II.

As a threshold matter, we note that because Carhart and the association seek sanctions for Stekelman's actions as a pro se litigant, we consider their arguments under Rule 1:4-8, and not under N.J.S.A. 2A:15-59.1. Trocki Plastic

Surgery Ctr. v. Bartkowski, 344 N.J. Super. 399, 405 (App. Div. 2001) (holding that Rule 1:4-8 and not N.J.S.A. 2A:15-59.1 governs request for sanctions against pro se litigant).

The rule requires an attorney or pro se litigant to certify, to the best of his or her knowledge formed after reasonable inquiry that (1) a pleading "is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation"; (2) "existing law or . . . a non-frivolous argument" to change the law warrants the pleading; (3) the factual allegations are adequately supported; and (4) factual denials are warranted. R. 1:4-8(a). An attorney or pro se litigant who violates any of those requirements is subject to sanctions if the aggrieved party demands in writing that the attorney or pro se litigant withdraw the offending pleading after specifically explaining why the pleading violates the rule, and the attorney or pro se litigant still refuses to withdraw the pleading. R. 1:4-8(b)(1). The Rule is not a simple fee-shifting mechanism. Sanctions for violating the rule "shall be limited to a sum sufficient to deter repetition of such conduct." R. 1:4-8(d).

We review a trial court's order to grant or deny sanctions under Rule 1:4-8 for an abuse of discretion. McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 498 (App. Div. 2011). We will disturb the trial court's decision only if the judge

did not consider "all relevant factors," relied on "irrelevant or inappropriate factors," or made a "clear error in judgment." Ibid. (quoting Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005)). We discern no mistaken exercise of discretion here.

The trial judge declined to find, in either case, that Stekelman filed her complaint for an improper purpose, such as to harass, or to unnecessarily delay litigation or increase its costs. Only the association challenges that finding, on the grounds that Stekelman filed her lawsuit challenging the project after she dismissed her first complaint without prejudice. Yet that fact hardly demonstrates the trial court erred, particularly given her certification that she dismissed the lawsuit because her attorney wanted to withdraw from representing her but advised her that she could re-file her suit.

Nor are we persuaded by Carhart's and the association's arguments that Stekelman's lawsuits lacked a reasonable basis in existing law or in a non-frivolous argument for a change in law. "Sanctions for frivolous litigation are not imposed because a party is wrong about the law and loses his or her case." Tagayun v. AmeriChoice of New Jersey, Inc., 446 N.J. Super. 570, 580 (App. Div. 2016). A court must examine the questioned pleading and the arguments for and against it to determine if the attorney or pro se party lacked an

objectively reasonable basis for the pleading.  See McDaniel, 419 N.J. Super. at 499 (noting that "[s]anctions are not to be issued lightly; they are reserved for particular instances where a party's pleading is found to be 'completely untenable,' or where no rational argument can be advanced in its support[.]" (quoting United Hearts, L.L.C. v. Zahabian, 407 N.J. Super. 379, 389 (App. Div. 2009))).

Carhart and the association bear the burden to show the trial court failed to properly perform that review.  While Carhart and the association ask us to overturn the court's decision, they have not provided us with the record of their motions to dismiss and for summary judgment.  Furthermore, they have not provided us with Stekelman's written opposition to their motions for sanctions. An appellant is required to provide in the appendix on appeal "such . . . parts of the record . . . as are essential to the proper consideration of the issues."  R. 2:6-1(a)(1)(I).  We are not "obliged to attempt review of an issue when the relevant portions of the record are not included."  Cmty. Hosp. Grp., Inc. v. Blume Goldfaden Berkowitz Donnelly Fried & Forte, P.C., 381 N.J. Super. 119, 127 (App. Div. 2005).[1]

_____

[1]  Notably, the court dismissed Stekelman's defamation complaint without prejudice.  Putting aside Stekelman's weak claim about Carhart's use of the word

In any event, we find no basis for concluding the court erred in finding that Stekelman had an objectively reasonable basis in the law, or a non-frivolous argument to extend the law, when she argued the vote approving the project was unlawful. To determine if a complaint states a claim upon which relief may be granted, a court searches the complaint indulgently and liberally for the fundament of a claim. Printing Mart-Morristown v. Sharp Elec. Corp., 116 N.J. 739, 746 (1989). The continuation-of-the-vote argument was the legal theory her second attorney utilized to support Stekelman's assertion in her complaint that the vote approving the project was unlawful. The association does not contend that the attorney's argument was frivolous. Stekelman's complaint encompassed that argument. Therefore, the complaint was not frivolous.

Finally, even assuming for argument's sake that Stekelman lacked an objectively reasonable basis in the law to pursue her defamation complaint against Carhart, or her action against the association, the court did not err in declining to award sanctions. In oral argument on the sanctions motion in the defamation case, Stekelman stated she might not have pursued the litigation if

---

"derail," the gist of Stekelman's complaint, generously read, was that Carhart crafted her communication with the intention that it would provoke Stekelman's neighbors to turn against her and cause her distress. Because Stekelman did not replead before Carhart filed her motion for sanctions, we do not address whether Stekelman had an alternative ground for relief.

she knew the consequences. Stekelman has incurred legal fees of her own in her unsuccessful attempt to challenge the homeowners association's project. She has become aware of the financial risks of bringing pro se litigation that a court may later find lacks a reasonable basis. In short, the court properly denied sanctions because none were necessary "to deter a repetition of such conduct." R. 1:4-8(d).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1799-19